[Cite as *State v. Whalen*, 2013-Ohio-535.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 11 MA 126 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| DAVID M. WHALEN | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:    Criminal Appeal from the County Court
                             No. 4 of Mahoning County, Ohio
                             Case No. 11 TRC 2386

JUDGMENT:                    Affirmed.

APPEARANCES:

For Plaintiff-Appellee:      Atty. Paul J. Gains
                             Mahoning County Prosecutor
                             Atty. Ralph M. Rivera
                             Assistant Prosecuting Attorney
                             21 West Boardman Street, 6th Floor
                             Youngstown, Ohio  44503

For Defendant-Appellant:     Atty. Timothy E. Bellew
                             214 North State Street
                             Girard, Ohio  44420

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

                             Dated:  February 14, 2013

WAITE, J.

{¶1} Appellant, David W. Whalen, appeals his conviction in Mahoning County Court No. 4 after refusing to take a breath test and for failure to stop at a stop light. Appellant argues on appeal that he received ineffective assistance of trial counsel due to counsel's failure to conduct discovery. Based on the record before us, Appellant's single assignment of error is without merit and the judgment of the trial court is affirmed.

### Factual and Procedural History

{¶2} In the early morning hours on April 21, 2011, Appellant, David W. Whalen, was travelling eastbound on Mahoning Avenue. He failed to stop at a stop light and proceeded to turn right without engaging his turn signal. A State Highway Patrolman, Charles Mendenhall, was driving in a marked patrol car behind Appellant at the time and activated the lights on his patrol cruiser to effectuate a stop of Appellant's vehicle. The two cars pulled into a bank parking lot and the patrolman approached Appellant's car. When Appellant rolled down his window, the patrolman noted that Appellant's eyes were glassy, his speech was slurred, and that a strong smell of alcohol was coming from Appellant's direction. Appellant admitted that he failed to stop at the red light and apologized to the patrolman; he was also able to produce his license, registration, and proof of insurance without difficulty. (Tr., p. 11.) When asked, Appellant told the patrolman that he was coming from Bill's Place, a bar on Mahoning Ave., about a mile from the traffic signal where Appellant failed to stop. According to the patrolman's testimony, this signal is the first Appellant would have encountered when travelling eastbound from the bar. Appellant told the patrolman

that he had two beers and a shot while he was at Bill's Place. The patrolman asked him to exit the vehicle to perform field sobriety tests. Although Appellant later testified that he was wearing glasses that night and that he took them off and placed them on the dashboard before taking the tests, the patrolman did not recall that Appellant had eyeglasses at any point.

{¶3} The patrolman administered multiple field sobriety tests, including the horizontal gaze nystagmus (which tests divided attention skills), a walk and turn test, and a one-legged stand test. During the initial test, the patrolman observed Appellant's ability to track his pen and how his eyes responded at the end of his field of vision. The patrolman noted that Appellant was unable to smoothly track the pen, and that his eyes made involuntary movements at the end of his field of vision. Both are indications of intoxication. As a result, Appellant did not pass this test, which was administered twice.

{¶4} The patrolman then walked with Appellant to a level surface for the walk and turn test and demonstrated to Appellant that he was to walk nine steps, heel to toe, then turn and repeat the steps, counting aloud. (Tr., p. 20.) Appellant confirmed that he understood the instructions, and attempted to begin the test on his own prior to the conclusion of instructions. Appellant was unable to stand with his right foot in front of his left and had to stop during the test to catch his balance. He raised his arms six inches or more in an attempt to balance himself. He also lost his balance when he attempted to turn, and thus, did not pass the test. (Tr., p. 22.) The

patrolman testified that Appellant's inability to maintain his balance, need to stop, use of his arms, and inability to turn were all additional indications of intoxication.

{¶5}  Finally, the patrolman testified as to Appellant's performance on the one-legged stand test while counting aloud.  Appellant followed the instructions given him and waited until the patrolman's demonstration was complete, but when he attempted to perform the test, he was swaying, hopped up and down to try and keep from putting his foot down, and ultimately had to touch the ground with both feet three times during the test.  (Tr., p. 23.)  Appellant failed all three field sobriety tests generally performed to determine whether someone is under the influence of alcohol.  As a result of these failures, Appellant's traffic violations and his observation of Appellant's demeanor, the patrolman arrested Appellant.  He confiscated Appellant's license, impounded his car and transported him to the Canfield Post of the State Highway Patrol.  (Tr., p. 25.)

{¶6}  Due to Appellant's prior 2007 alcohol-related violations, the patrolman had read Appellant the text of a Bureau of Motor Vehicles form at the scene, prior to his removal to the highway patrol post.  This form, Number 2255, explains the breath test the patrolman sought to administer, the consequences of the test, and the consequences of a refusal to submit to the test.  Appellant initially consented to take the test and knew he was to be transported to the post for this purpose.

{¶7}  Prior to administering the test at the post, the patrolman explained how to blow into the machine properly and that it was important to close one's lips around the mouthpiece and blow in a steady continuous breath until told to stop.  According

to the patrolman, although Appellant was properly instructed, he did not comply and instead gave an invalid sample. Appellant put saliva on the mouthpiece, blew and stopped repeatedly, and did not blow hard enough for a valid sample to be taken. According to the patrolman, he explained the problems to Appellant who responded that he had some shrapnel from bullet wounds still in his chest from a military tour of duty in Iraq. The patrolman cleared the machine, asked Appellant to try again with a single continuous breath, and explained that a failure to perform the test correctly would constitute a refusal and that Appellant would be charged with that refusal. Appellant's performance again fell short in the same way, with short breaths and saliva on the mouthpiece, and the results were again invalid. The patrolman testified that he believed Appellant's failure was intentional and not the result of any physical inability to perform the test. (Tr., p. 34.) Appellant was charged with refusal to take a breath test, failure to obey a traffic control light, and a seatbelt violation.

{¶8} At trial, Appellant testified that he was on his way to the bank to transfer money after his debit card was declined at Taco Bell and that he never told the patrolman that he was coming from Bill's Place or that he had imbibed two beers and a shot. According to Appellant, whiskey "does not agree" with him. (Tr., p. 66.) Appellant testified that he was coming from Wedgewood Lanes with a friend of his who had called him for a ride because she was too drunk to drive. He said that he found his friend in the bar at Wedgewood Lanes, stayed with her long enough to have a single beer and possibly some sips of another. The two of them then left to pick up food at Taco Bell before returning to his house.

{¶9} When Appellant's card was declined at Taco Bell he decided to go to the bank down the street to transfer funds. At that time he also had to go to the restroom, and claims that he ran the stop light because he was in a hurry to find a restroom. He did not notice the patrol car behind him when he ran the light. Appellant believes that any strong scent of alcohol that night was due to his friend's presence in the vehicle.

{¶10} According to Appellant, he uses corrective lenses at night and has astigmatism on both eyes. That night, when he pulled into the bank parking lot, he unbuckled his seat belt to get to his wallet before the patrolman approached the car. Appellant testified that his left knee was unsound due to an injury he sustained in the military. Appellant also testified that he was suffering from "COPD" (never defined during testimony or otherwise) and has scar tissue in his lungs due to additional injuries suffered overseas. Appellant says he explained his lung problems to the patrolman while he was waiting to take the breath test. He said that he never told anyone he was shot in the chest, but instead, that he was shot from behind while wearing a flack jacket. (Tr. pp. 61-62.) Appellant further explained that any unsteadiness in his heel to toe walk was attributable to his weak left knee; that his eyes are always bloodshot and glassy; and that failure of the various eye tests was caused by his astigmatism. Appellant maintains that the single beer he drank that night, given his height and weight, would not have impaired his ability to drive or, absent his injuries, pass the various tests.

{¶11} Appellant testified that he did not intentionally fail to comply with the patrolman's instructions for the breath test. He claimed that he performed to the best of his ability and that he saw only condensation, not saliva, in the mouthpiece. Appellant did not produce any verification of his alleged eye problem and did not present any evidence suggesting that astigmatism would cause him to fail his field sobriety test. Interestingly, Appellant was not wearing glasses at trial. When asked about his glasses at trial, he said his daughter had broken them. Appellant also did not produce any medical records or other evidence of any knee or torso injuries despite the fact that he testified these injuries caused him to fail the other sobriety tests that he was administered. Appellant does not contest the fact that he failed to stop for a red light.

{¶12} Appellant's trial was conducted on August 10, 2011 before a judge. The trial court heard testimony from the patrolman, Appellant, and Appellant's wife before closing arguments. The court found Appellant guilty of refusing the breath test, a violation of R.C. 4511.19, and failure to obey a traffic control light, in violation of R.C. 4513.263. The court found Appellant not guilty of the seat belt violation due to the absence of any mention of the offense during the state's case. The court sentenced Appellant to 180 days in jail, with 170 days suspended; $750.00 and $25.00 in fines and costs. The court also required that Appellant undergo an alcohol assessment to be completed within 30 days. While the court suspended Appellant's operator's license for two years, the court granted occupational driving privileges with restricted plates and an ignition interlock. Appellant was also sentenced to twenty-

four months of community control. Appellant filed his timely appeal on August 15, 2011.

Argument and Law

Assignment of Error

APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE 4th, 5th, 6th, AND 14th AMENDMENTS TO THE U.S. CONSTITUTION AS WELL AS ARTICLE 1 § 10 OF THE OHIO CONSTITUTION, WAS DENIED BY THE APPLLEANT'S [SIC] TRIAL ATTORNEY'S INEFFECTIVE REPRESENTATION.

**{¶13}** To prevail on a claim of ineffective assistance of counsel, Appellant must show not only that counsel's performance was deficient, but also that he was prejudiced by that deficiency. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984) *see also State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶107. "Deficient performance" means performance falling below an objective standard of reasonable representation. "Prejudice," in this context, means a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland* at 687-688, 694. Moreover, in evaluating the performance of counsel, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments

support the limitations on investigation." *Id.* at 690-691. Each of the alleged errors will be evaluated under the two-pronged *Strickland* test.

**{¶14}** Appellant argues that trial counsel was deficient due to his failure to file an appearance or any other pre-trial motion, including a motion for discovery. Appellant also complains about a form that appears in the record as the prosecutor's subpoena worksheet. This form indicates that a subpoena duces tecum was to be issued for the patrolman and that he was to produce at trial any video and/or reports. The subsequent subpoena that appears in the record is labeled duces tecum, but does not identify what materials the officer is to produce. Although it does refer to an attachment, it is not clear what was attached to this subpoena. Apparently, Appellant believes that counsel was deficient for not requiring the patrolman to produce a videotape of the arrest.

**{¶15}** At trial, defense counsel discussed a failed breath test report which appears in the record, and according to testimony was the only copy of this report. The information in the transcript reflects that the breath analysis report was available at trial, along with the ticket and warning concerning the breath test, both of which were provided to Appellant at the time of his arrest. Also of record is a typed arrest report, addressed to the judge and time-stamped on April 21, 2011, the date of Appellant's arrest. These are the only reports that appear in the record and the only material referred to during the trial.

**{¶16}** There is nothing in the testimony offered at trial to suggest a video was made of the events of that night. Appellant did not testify that he saw video

equipment or had any reason to believe that he was being recorded. The prosecution did not reference a video or introduce any evidence or information beyond the testimony of the patrolman, the failed breath analysis report, and the ticket and warning information. Nothing in the record suggests that the prosecutor possessed any additional information and the prosecution appears to have relied only on the documents Appellant received on the night he was arrested along with the typed arrest report that was filed with the court on April 21, 2011.

**{¶17}** The fact that the breath analysis report, ticket, breath test warning and typed arrest report were the only materials available is supported by the fact that the prosecutor's office issued a subpoena duces tecum requesting that any additional material be produced by the patrolman at trial and the patrolman appeared at trial without any new material. No new evidence was discussed or introduced at trial. Moreover, had the patrolman provided any additional material at trial, defense counsel would have had the same access to the new material as the state. Both sides would have seen the material for the first time at trial. The only evidence the state actually relies on was filed with the clerk on April 21, 2011, and was available to defense counsel. Appellant does not argue or offer proof in any form that a video exists, beyond the reference in the subpoena duces tecum and a general assertion that he believes "[i]t is widely known that almost every police cruiser now possesses some sort of video and audio recording equipment. This is especially true of the Ohio Highway Patrol official police cruisers." (Appellant's Brf., p. 6.) Although Appellant claims this is general knowledge, he has produced nothing to support this claim: no

law or procedural requirement that would indicate a video should have been taken of the events that night, and certainly nothing to indicate that anything captured on the video would have assisted his case. More importantly, Appellant was not charged in connection with any of the events he believes would have been recorded, other than failure to stop at a red light. Appellant admits to this violation. Appellant also concedes that he failed the various field sobriety tests. It appears that Appellant is arguing that defense counsel was deficient in failing to ask for something that did not exist and was not probative of the only real issue at trial: whether he refused the breath test. Even if this were deficient performance on counsel's part, and it is not, Appellant has not shown that he was prejudiced by the alleged deficiency.

{¶18} Appellant's entire defense at trial revolved around the various injuries he believed accounted for his failure to pass the tests administered to him. Because Appellant was charged with failure to comply with the breath test, his assertion that the intoxicated friend he was driving home, who was not present at trial, was the source of the scent of alcohol is not relevant. Appellant's assertions that his weak knee and his astigmatism were responsible for other failures are similarly not relevant to the offense with which he was actually charged, although the fact that he failed these tests is relevant to the patrolman's decision to administer a breath test.

{¶19} Appellant argues that defense counsel should have produced "proper medical documents" at trial to support his arguments. Any document or physical proof of Appellant's injuries would certainly have been in Appellant's possession or under Appellant's own control. Appellant does not indicate that these records were

provided to counsel, or even that the records actually exist. In order to satisfy the elements of *Strickland*, Appellant must demonstrate both that counsel's performance was substandard and that prejudice resulted from that substandard performance. To achieve this, Appellant must be able to cite to material in the record. Although Appellant now claims that counsel should have produced medical evidence, nothing in the record identifies what kind of medical evidence or establishes that relevant evidence exists. Assuming relevant records exist, we have no way to ascertain that they were ever supplied to counsel. It is not clear from this record that evidence beyond Appellant's own testimony exists or if such evidence exists, that it would be exculpatory. Moreover, even if this alleged evidence was produced at trial, nothing in this record, or raised by Appellant on appeal, could result in the guarantee of acquittal.

{¶20} To reverse a verdict on a claim of ineffective assistance of counsel, Appellant must demonstrate that counsel's performance was deficient and show prejudice resulting from the deficiency. "To establish prejudice, 'the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.' " *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶108. Appellant in this instance fails on both elements. He has not demonstrated that any of the alleged errors constituted deficient performance under the circumstances, and has further failed to connect the alleged errors to any reasonable probability that had counsel acted otherwise the

result of the trial would have been different. Appellant's single assignment of error is overruled.

## Conclusion

**{¶21}** Appellant admitted that he failed to stop for a red light and does not challenge his conviction on that offense. Appellant's focus is on his conviction for refusing to take a breathalyzer test. Appellant argues that counsel was deficient in failing to request discovery from the state, but fails to identify any potentially exculpatory evidence. Appellant has also failed to support his claim that counsel should have produced medical records in support of his testimony regarding his various medical conditions. Appellant makes no showing that evidence of these conditions, should evidence exist, would have altered the outcome of the trial. Because Appellant has not identified deficient performance on trial counsel's part or prejudice resulting from this performance, his single assignment of error is overruled and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

DeGenaro, P.J., concurs.